IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ERIN LERETTE, individually and as guardian and next friend of minor child, B.T.B.; TRISTAN T. BURTON,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>CITY AND COUNTY OF HAWAII, et al.,<br><br>　　　　　　Defendants. | CIV. NO. 20-00202 JAO-RT<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, ECF NO. 87 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS, ECF NO. 87**

Before the Court is a Motion for Judgment on the Pleadings ("Motion")

from Defendants County of Hawaiʻi (the "County"),[1] Luke Watkins, Paul T.

Isotani, and Landon Takenishi (collectively, "Defendants").  ECF No. 87.  In the

Motion, Defendants contend they are entitled to judgment as a matter of law on the

claims asserted in this wrongful death case by Plaintiffs Tristan Burton ("Tristan")

and Erin Lerette ("Lerette"), individually and as guardian and next friend of minor

child B.T.B.  *See id.*; ECF No. 87-1.  Defendants argue they are entitled to

---

[1]  The Complaint, ECF No. 1, erroneously refers to the County as the "City and
County of Hawaiʻi."  There is no "City of Hawaiʻi."

judgment against all twelve of Plaintiffs' claims due to the res judicata effect of the Court's grant of summary judgment against similar claims in a prior wrongful death case. *See* ECF No. 87-1 at 8–9. Defendants also argue they are entitled to judgment against Plaintiffs' claims because those claims lack either supporting factual allegations or cognizable legal theories.

As explained below, the Court concludes that res judicata is inapplicable because Plaintiffs are not in privity with the plaintiffs in the prior case. Defendants' Motion is thus DENIED on that ground. But the Court also concludes that four of Plaintiffs' claims are not actionable in their entirety, and versions of two other claims are not actionable, either. Defendants' Motion is thus GRANTED as to those claims.

## I.      BACKGROUND

### A.      History of This Case

Plaintiffs filed their Complaint on May 3, 2020, alleging federal question jurisdiction over their federal claims and supplemental jurisdiction over their Hawaiʻi law claims. ECF No. 1 at 3. The Complaint involves allegations of a 2018 altercation between Vincent T. Burton ("Vincent") and officers from the Hawaiʻi County Police Department ("HPD") that resulted in Vincent's wrongful death. *See id.* 6–12. The Plaintiffs are Vincent's surviving son, Tristan, and Vincent's surviving sister, Lerette, who asserts claims for herself and on behalf of

Vincent's other surviving son, B.T.B., a minor child over whom she serves as guardian. *Id.* at 4. Vincent's estate is not a plaintiff in this case. *See id.* at 1–2, 4.

Because the Court and the parties are familiar with this case, the Court provides a brief summary of the facts and the procedural history.

### 1.   Plaintiffs' Factual Allegations and Legal Claims

On May 3, 2018, Vincent, accompanied by his wife while driving around the island of Hawaiʻi, pulled over behind a subsidized police vehicle and approached the vehicle, believing that it belonged to a longtime friend. ECF No. 1 at 6. After approaching, Vincent learned that it was not his friend in the vehicle but was instead Officer Takenishi. *Id.* at 7. Vincent drove away, against Takenishi's orders. *Id.*

At a gas station in Honokaʻa, multiple officers approached Vincent, including Watkins and Isotani. The officers handcuffed Vincent after administering a field sobriety test. One of the officers, joined by Watkins, then attacked Vincent, forcing him to the ground. The officers stopped assaulting Vincent when he instructed his wife to record the incident. Vincent was taken into custody and transported to the Hamakua Police Station. Upon arriving at the station, Watkins mistakenly believed that Vincent was trying to escape the transport vehicle, so Watkins threw Vincent to the ground. *Id.*

The next day, police officers took Vincent to Hilo Medical Center before transferring him to Hilo Community Correctional Center.  *Id.* at 8.  Vincent heard one of the officers say that they should take him to Hilo Medical Center so that they would not be blamed for his injuries.  Following his diagnosis—broken ribs and a concussion—Vincent was returned to police custody and transported to Hilo Community Correctional Center.  *Id.*

Vincent remained in a holding cell for approximately four days until his sister, Lerette, bailed him out of custody.  *Id.* at 9–10.  Within three days after being bailed out—i.e., eight days after the alleged altercation—Vincent vomited blood and was admitted to Hilo Medical Center's emergency department.  *See id.* at 9.  Vincent remained at the hospital until he passed away on May 20, 2018, seventeen days after the alleged altercation.  *See id.* at 9–10.  Vincent's surviving sons include Tristan and B.T.B.  *Id.* at 4.

Plaintiffs incorporate the above factual allegations into twelve legal claims:

Count I:      "42 U.S.C. § 1983 (Color of Law)"

Count II:     "Negligent Training/Supervision"

Count III:    "Assault and Battery"

Count IV:    "Wrongful Death"

Count V:     "Negligence"

Count VI:    "Gross Negligence"

Count VII:   "Intentional Infliction of Emotional Distress"

4

Count VIII:  "Negligent Infliction of Emotional Distress"

Count IX:    "Respondeat Superior and/or Vicarious Liability"

Count X:     "Conspiracy to Interfere with Civil Rights – Submission of False Police Reports and Investigation and Coverup in Violation of 42 U.S.C. § 1985"

Count XI:    "42 U.S.C. § 1983 Submission of False Police Report and Investigation in Violation of Plaintiffs'/Decedent's 5th and 14th Amendment Rights to Property and Due Process"

Count XII:   "Spoilation [sic] of Evidence"

ECF No. 1 at 12–23.

For Counts I through IX, Plaintiffs allege they have "sustained substantial damages," including losses of "companionship," "love," and "a lifetime of expected support." *Id.* at 12–20.  For the remaining Counts, Plaintiffs assert more general harms, such as "violation[s] of [their] 5th and 14th amendment rights to property and due process." *E.g.*, *id.* at 22.  And in the final paragraphs of their Complaint, Plaintiffs pray for "monetary damages, in an amount to be proven at trial," among other remedies. *Id.* at 23.

Plaintiffs make their claims against Watkins, Isotani, and Takenishi (the "Officer Defendants"), as well as against the County.  HPD was also a defendant in this case, but the Court dismissed HPD and the claims against it during the motion to dismiss stage, as discussed below.

**2.      Defendants' Dispositive Motions**

In September 2020, the Officer Defendants, the County, and HPD moved to dismiss the Complaint on various grounds.  ECF No. 16.  The Court granted that motion in part and denied it in part.  ECF No. 34.  More specifically, the Court dismissed the claims against the Officer Defendants in their official capacities (but not their individual capacities) and dismissed the claims against HPD with prejudice, terminating HPD as a party.  *See id.* at 7, 8, 12.  The Court also dismissed Lerette's and Tristan's tort law claims against the County in Counts II through IX, and in Count XII, clarifying that B.T.B.'s versions of those claims remained.  *Id.* at 11.  No leave to amend was given, *see id.* at 7, and Plaintiffs have not amended their Complaint.

Defendants filed their Motion for Judgment on the Pleadings in February 2023, ECF No. 87, after discovery had closed, *see* ECF No. 95 at 3.  Plaintiffs submitted an Opposition, ECF No. 96,[2] and Defendants submitted a Reply, ECF No. 97.  The Court heard the Motion on June 2, 2023.  ECF No. 107.  At that hearing and throughout the briefing on the Motion, the parties disputed the significance of the final judgment in a related case before this Court, *Burton v. City*

---

[2]  That Opposition was submitted by Plaintiffs' counsel Paul V.K. Smith and Terrance M. Revere.  ECF No. 96 at 28–29.  Plaintiffs are also represented by Myles S. Breiner.  *See* ECF No. 93 at 2.

*& Cnty. of Hawaii*, No. CV 20-00208 JAO-RT (D. Haw. filed May 4, 2020) (the "Burton lawsuit").

## B.  History of the Burton Lawsuit

On May 4, 2022, Vincent's surviving wife, Donna Joyce Burton ("Donna"), filed a federal question complaint against the same defendants in this case.  Case No. CV 20-00208 JAO-RT, ECF No. 1 at 1–3.  Donna—represented by different counsel than Plaintiffs—brought claims individually and as the representative of Vincent's estate (collectively, the "Burton plaintiffs").  *See id.* at 2, 41.  She did not bring claims on behalf of Tristan or B.T.B., who were not parties to the lawsuit and were not described in the complaint as being legally related to Donna.  *See id.* at 1–7.

Despite the difference in claimants and counsel, the allegations and legal claims in the Burton lawsuit resemble those asserted in this case.

### 1.  Factual Allegations and Legal Claims in the Burton Lawsuit

The allegations in the Burton lawsuit concerned a May 4, 2018 altercation between Vincent and HPD officers.  *See* Case No. CV 20-00208 JAO-RT, ECF No. 1 at 7.  Sparking that altercation was Vincent pulling behind a subsidized police vehicle that he believed to be occupied by a longtime friend, and driving away from that vehicle once he realized it was occupied by someone else.  *See id.* Vincent again interacted with police officers near a church in Honokaʻa, where he

was administered a sobriety test.  *See id.* at 10.  That interaction turned physical

when HPD officers, including Watkins, Isotani, and Takenishi, kicked and

stomped Vincent while he was handcuffed on the ground.  *Id.* at 10–12.  The

alleged beating stopped when Vincent asked Donna whether she was recording the

incident.  *Id.* at 12.

After the alleged beating, Vincent was transported to Hamakua Police

Station and then to Hilo Hospital Emergency Room, where he was diagnosed with

a rib fracture indicating that he had been pulled from a vehicle and kicked,

presumably while in custody of HPD.  *Id.* at 14.  Vincent remained in a holding

cell at the police station for approximately four days until he was bailed out by his

sister, Lerette.  *Id.* at 14–15.  Vincent was then admitted to Hilo Medical Center,

where he later passed away on May 20, 2018.  *Id.* at 15–17.

The legal claims asserted in the Burton lawsuit included, as in this case,

violations of Fifth and Fourteenth Amendment rights under "42 U.S.C. § 1983";

"Negligence in Training and Failure to Adequately Supervise"; "Assault and

Battery"; "Wrongful Death"; "Negligence"; "Gross Negligence"; "Intentional

Infliction of Emotional Distress"; "Negligent Infliction of Emotional Distress"; and

"Respondeat Superior and/or Vicarious Liability."  Case No. CV 20-00208 JAO-

RT, ECF No. 1 at 18–38.

The remedies requested in the Burton lawsuit included Donna's losses of "companionship," "love," and "a lifetime of expected support." *E.g.*, *id.* at 34. The remedies requested also included losses by Vincent's estate, such as damages for "medical bills," "funeral expenses," "out-of-pocket expenses," and other "economic loss." *E.g.*, *id.* at 38.

The Burton plaintiffs were represented by Moanikeʻala R. Crowell, Michael Jay Green, and Richard E. Wilson. *See id.* at 41. Mr. Green withdrew in May 2021 due to a personal conflict with Ms. Crowell, leaving Ms. Crowell as lead counsel during motions practice. Mr. Wilson appeared after Mr. Green's withdrawal and played a very minor role in the litigation. *See* Case No. CV 20-00208 JAO-RT, ECF Nos. 45, 50 (sealed), 63, 72, 99.

### 2.    Motions in the Burton Lawsuit

The defendants in the Burton lawsuit moved for summary judgment. Case No. CV 20-00208 JAO-RT, ECF No. 93. The defendants supported their motion with a concise statement of facts and numerous evidentiary exhibits, including sworn declarations from the defendant police officers. The plaintiffs did not, however, submit a counter statement of facts or provide any evidentiary exhibits. Case No. CV 20-00208 JAO-RT, ECF Nos. 94, 94-1, 99.

The Court held a virtual hearing on the motion for summary judgment in early 2022. At that hearing, the plaintiffs' lead counsel, Ms. Crowell, joined the

video teleconference at least ten minutes late.  The Court questioned Ms. Crowell

on her late appearance, remarking that it had been conducting virtual hearings for

quite some time and that Ms. Crowell was the first attorney to show up so late.

The Court later warned Ms. Crowell that she would be sanctioned if she was late

again.  Notably, Ms. Crowell had previously been sanctioned $1,000 by Magistrate

Judge Rom Trader for failing to timely serve initial disclosures.  *See* Case No. CV

20-00208 JAO-RT, ECF Nos. 69, 71.

On the merits of the motion, the defendants' counsel emphasized the

plaintiffs' failure to submit a statement of facts and asked the Court to accept as

true the defendants' statement of facts.  The Court questioned Ms. Crowell on that

point, and she acknowledged that she had failed to submit a statement of facts, but

she requested that the Court take judicial notice of the allegations in the complaint,

in lieu of a statement of facts.  The Court denied that request, of course, after Ms.

Crowell was unable to cite precedent for her request.  The Court also denied Ms.

Crowell's request for leave to file a statement of facts, a request she lodged for the

first time during the hearing.  And in closing, the Court asked Ms. Crowell to

address an argument raised in the defendants' reply brief, but she was unable to

respond after admitting that she had not adequately prepared.

The Court granted the defendants' motion for summary judgment in a

written order.  *Burton v. City & Cnty. of Hawaii*, 2022 WL 280999 (D. Haw. Jan.

31, 2022).  To begin that order, the Court reviewed Local Rule 56.1(e) and Federal Rule of Civil Procedure ("FRCP") 56(c), the sum of which requires a party opposing summary judgment to file a counter statement of facts.  *See Burton*, 2022 WL 280999, at *1.  Because the plaintiffs failed that requirement, the Court deemed the defendants' concise statement of facts admitted for purposes of the motion, pursuant to Local Rule 56.1(g) and FRCP 56(e)(2).  *Burton*, 2022 WL 280999, at *1.

The facts in the defendants' concise statement painted a "wildly different versions of the events" alleged in the complaint:  Vincent was driving without a license; was inebriated; evaded Takenishi's initial investigation for driving under the influence and disregarding a second officer's commands at a gas station; and was propelled to the ground by Watkins' restraint maneuver after attempting to flee custody.  *Id.* at *2–3.  The defendants' concise statement also included the fact that, weeks before the events at issue, Vincent fell off his lanai during a scuffle with his son, possibly causing his rib fracture.  *See id.* at *3, *7.

With those facts admitted, the plaintiffs' claims were all but finished.  The Court found that Watkins' use of force was objectively reasonable, i.e., not excessive, given Vincent's active resistance to arrest and the threat Vincent posed to Watkins.  *Id.* at *10; *see also id.* at *6 ("Again, the Court reiterates that Plaintiffs have not proffered any evidence in opposition to this Motion.  Instead,

they [incorrectly] argue that in deadly force cases where the decedent would be the only witness to contradict the officers, the plaintiff need not submit any evidence.").  As for Isotani and Takenishi, the Court found no evidence demonstrating that those officers used force against Vincent.  *Id.* at *13.  The Court's findings undercut all of the plaintiffs' claims because there was no wrongful act by an HPD officer on which a constitutional violation or tort claim could be based.  *See id.* at *10–13; *see also id.* at *13 ("As the Court has repeated, Plaintiffs failed to proffer any evidence whatsoever.").

### 3.    Appeal of the Burton Lawsuit and the Concurrent Disciplinary Proceedings Against Ms. Crowell

After judgment was entered on the summary judgment order, the defendants appealed to the Ninth Circuit.[3]  That appeal was dismissed on August 17, 2022 due to a failure to prosecute; the plaintiffs, still represented by Ms. Crowell (and Mr. Wilson), had failed to file an opening brief.  Case No. CV 20-00208 JAO-RT, ECF Nos. 108, 111, 112, 116.

Around the same time as the appeal—and possibly affecting Ms. Crowell's performance in the appeal—was an August 11, 2022 petition by the Office of Disciplinary Counsel of the Hawai'i Supreme Court seeking to suspend Ms.

---

[3] This case, i.e., *Lerette v. City & Cnty. of Hawaii*, was stayed pending the resolution of the appeal in the Burton lawsuit.  *See* ECF Nos. 79, 80, 85.

Crowell from the practice of law.  *See Disciplinary Bd. of Haw. Supreme Ct. v. Crowell*, 2022 WL 17688363, at *1 (Haw. Dec. 15, 2022).  The Hawaiʻi Supreme Court granted that petition on December 15, 2022, suspending Ms. Crowell's law license after finding that Ms. Crowell had "failed to respond to four separate subpoenas lawfully issued by [the Office of Disciplinary Counsel]."  *Id.*

## II.   LEGAL STANDARD

FRCP 12(c) permits a motion for judgment on the pleadings.  "[J]udgment on the pleadings is properly granted when, 'taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'"  *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)).  "Generally, a court may not consider any material beyond the pleadings in ruling on a[n] [FRCP] 12(c) motion, but a 'court may consider facts that are contained in materials of which the court may take judicial notice.'"  *Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 698 (N.D. Cal. 2020) (quoting *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (omitting citations and quotation marks)); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[Courts] may take judicial notice of court filings and other matters of public record.").

An FRCP 12(c) motion for judgment on the pleadings is functionally equivalent to an FRCP 12(b)(6) motion to dismiss, so courts apply the same standards of review for both. *See Gregg*, 870 F.3d at 887. FRCP 12(b)(6) authorizes a court to dismiss a complaint that fails "to state a claim upon which relief can be granted" due to either "the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The court must accept as true the facts alleged in the complaint and determine whether the complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor must it accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Courts may consider the affirmative defense of res judicata in an FRCP

12(b)(6) motion but only if that affirmative defense raises no disputed issues of

fact.  *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam).

Similarly, because FRCP 12(c) permits motions for judgment on the "pleadings,"

and because res judicata is typically an affirmative defense raised in a responsive

pleading, *see* FRCP 8(c)(1), res judicata can also be raised in a motion under FRCP

12(c).  *See Aiwohi v. Bank of Am., N.A.*, 2023 WL 2614244, at *3 (D. Haw. Mar.

23, 2023) (citing *United States v. Grace*, 526 F.3d 499, 509 (9th Cir. 2008)); *cf.*

*Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246–54 (9th Cir. 2017)

(reversing and remanding a district court's grant of "judgment on the pleadings

based on res judicata," where res judicata was not warranted on the facts).

## III.  DISCUSSION

In their FRCP 12(c) Motion, Defendants contend they are entitled to

judgment as a matter of law for two reasons:  First, all of Plaintiffs' claims are

barred by res judicata (claim preclusion and/or issue preclusion).  Second,

Plaintiffs' claims either lack supporting factual allegations or lack cognizable legal

theories.  *See* ECF No. 87-1.

As a preliminary matter, the Court takes judicial notice of certain filings in

the Burton lawsuit, *Burton v. City & Cnty. of Hawaii*, No. CV 20-00208 JAO-RT

(D. Haw. filed May 4, 2020), because that case is relevant to the parties' dispute

over res judicata.  Particularly, the Court takes judicial notice of the filings cited above, in Part I.B.:  ECF Nos. 1 (the complaint), 45 (Mr. Green's motion to withdraw), 50 (Mr. Green's sealed supplemental declaration supporting motion to withdraw), 63 (order granting Mr. Green's motion to withdraw), 69 (minute order summarizing discovery sanction against Ms. Crowell), 71 (order granting the defendants' motion to compel initial disclosures), 93 (the defendants' motion for summary judgment), 94 (the defendants' concise statement of facts in support of summary judgment), 94-1 (declaration by defense counsel outlining summary judgment exhibits), 99 (the plaintiffs' opposition to summary judgment), 107 (order granting summary judgment),[4] 108 (clerk's judgment), 111 (the plaintiffs' notice of appeal), 112 (the Ninth Circuit's confirmation of notice of appeal), and 116 (the Ninth Circuit's order dismissing appeal).

Considering those filings and the pleadings in this case, the Court holds that the Burton lawsuit is not res judicata to Plaintiffs' claims, because there is a lack of privity between the plaintiffs there and Plaintiffs here.  But the Court also holds that Defendants are entitled to judgment against the claims in Counts II, X, XI, and XII in their entirety because those claims are not actionable.  And the Court holds that versions of the claims in Counts I and IX are not actionable either, requiring

---

[4]  The order granting summary judgment was electronically published as *Burton v. City & County of Hawaii*, 2022 WL 280999 (D. Haw. Jan. 31, 2022).

that judgment be entered against those versions of Plaintiffs' claims.  The Court

describes its holdings in more detail below.

## A.    Res Judicata

Defendants argue that Plaintiffs' claims are barred due to both claim

preclusion and issue preclusion.  *See* ECF No. 87-1 at 14–19; *see also Taylor v.*

*Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined

by claim preclusion and issue preclusion, which are collectively referred to as 'res

judicata.'").  Defendants specifically argue that the Burton lawsuit featured the

same legal claims as this case and that the Court's grant of summary judgment in

the Burton lawsuit thus precludes this lawsuit.  ECF No. 87-1 at 14–15 (arguing

claim preclusion while summarizing the counts asserted in the Burton lawsuit).

And even if this case features new legal theories, Defendants argue that the new

theories are premised on issues of law and fact previously decided in the Burton

lawsuit—whether the Officer Defendants used excessive force causing Vincent's

wrongful death—precluding those issues from being decided again in this case.

*See id.* at 15–17; *id.* at 13 ("[Plaintiffs' due process claims] are barred because

there has already been a finding that the force used was constitutional."); *id.* at 20.

Claim preclusion and issue preclusion have similar elements under federal

law, which governs the preclusive effect of a federal question case such as the

Burton lawsuit.  *See Taylor*, 553 U.S. at 891 ("The preclusive effect of a federal-

court judgment is determined by federal common law."); *Chudacoff v. Univ. Med. Ctr.*, 525 F. App'x 530, 531 (9th Cir. 2013) (mem.) ("Where, as here, federal-court jurisdiction is based on the presence of a federal question, federal preclusion doctrine applies.").  Claim preclusion applies when a previous proceeding "(1) involved the same claim or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Save Bull Trout v. Williams*, 51 F.4th 1101, 1107 (9th Cir. 2022) (citation and quotation marks omitted).  Issue preclusion applies when "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding." *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011) (citation omitted) (alteration in original).

Here, even assuming that the Burton lawsuit involved the same factual allegations and legal claims as this case, the judgment in the Burton lawsuit is not preclusive because Plaintiffs are not in privity with the Burton plaintiffs.  Privity— for the purposes of res judicata—is a "legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (citation and quotation marks omitted).

18

The Supreme Court provided an informative discussion of privity in its 2008 *Taylor* decision.  The Court set the table for that discussion by reminding readers of the default rule against nonparty preclusion:

> A person who was not a party to a suit generally has not had a "full and fair opportunity to litigate" the claims and issues settled in that suit.  The application of claim and issue preclusion to nonparties thus runs up against the "deep-rooted historic tradition that everyone should have his own day in court." [*Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996)] (internal quotation marks omitted).  Indicating the strength of that tradition, we have often repeated the general rule that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." [*Hansberry v. Lee*, 311 U.S. 32, 40 (1940)]; . . . .
>
> Though hardly in doubt, the rule against nonparty preclusion is subject to exceptions.

*Taylor*, 553 U.S. at 892–93 (citations omitted); *see also id.* at 894 n.8 ("avoid[ing] using the term 'privity'" "[t]o ward off confusion," while recognizing that term had "come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground").

The Supreme Court then summarized the "six categories" of exceptions "to the rule against nonparty preclusion." *See Taylor*, 553 U.S. at 893–95.  Although not invoking the magic word "privity," the *Taylor* Court's discussion of the "six categories" makes clear that those categories represent different fact patterns for "privity," i.e., "ways of organizing the established grounds for nonparty

preclusion."  18A Wright, Miller & Cooper, *Federal Practice and Procedure*
§ 4448 n.3 (3d ed. 2023) (discussing *Taylor*, 553 U.S. at 893 n.6); *see also Wi-Fi
One, LLC v. Broadcom Corp.*, 887 F.3d 1329, 1338 n.3 (Fed. Cir. 2018) ("The
dissent faults the [administrative law board] for not discussing all of the *Taylor*
factors bearing on a finding of privity."); *Roybal v. City of Albuquerque*, 2009 WL
1300048, at *7 (D.N.M. Feb. 2, 2009) ("Regardless of the precise boundaries of
privity as a term of art, in the wake of *Taylor* [], it is clear that, for claim preclusion
to apply to a non-party, one of the six categories must be present.").

    In any event, only two categories are relevant to this case.  The first relevant
category is when, "'in certain limited circumstances,' a nonparty [is] bound by a
judgment because she was 'adequately represented by someone with the same
interests who [wa]s a party' to the suit." *Taylor*, 553 U.S. at 894 (quoting
*Richards*, 517 U.S. at 798) (second alteration in original).  "Representative suits
with preclusive effect on nonparties include properly conducted class actions, . . .
and suits brought by trustees, guardians, and other fiduciaries[.]" *Id.* (citations
omitted).  The second relevant category of privity is when there is a "pre-existing
substantive legal relationship[] between the person to be bound and a party to the
judgment." *Id.* (citation and quotation marks omitted).  "Qualifying relationships
include, but are not limited to, preceding and succeeding owners of property, bailee
and bailor, and assignee and assignor." *Id.*

According to Defendants, Plaintiffs are in privity with the Burton plaintiffs because "there remains a familial relationship among the plaintiffs for both cases." ECF No. 87-1 at 18.  Defendants contend that the familial relationship establishes privity because the Burton plaintiffs are "so closely aligned with the nonparty [Plaintiffs] as to be [their] 'virtual representative[s].'"  *Id.* (quoting *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984), and *Jackson v. Hayakawa*, 605 F.2d 1121, 1126 (9th Cir. 1979)).

Defendants' reliance on the older "virtual representative" caselaw is misplaced because the Supreme Court disapproved of "preclusion by 'virtual representation'" in its *Taylor* decision.  553 U.S. at 885; *see also Bhatia*, 545 F.3d at 758 ("[Appellant's] argument is a variation on the 'virtual representation' theory recently rejected by the Supreme Court in *Taylor*[.]").  Indeed, Defendants completely overlook the *Taylor* decision by failing to cite it in their Motion and Reply.  *See* ECF Nos. 87-1, 97.  Despite that oversight, the Court generously interprets Defendants' contention as an assertion that the familial relationships in

this case—father and sons, and stepmother and sons[5]—establish privity through "adequate representation," the first category of privity outlined above. *See id.* at 19 (citing and summarizing *Trevino*, 99 F.3d at 923–24, a case in which the plaintiff was bound by a prior judgment against her grandmother).

But that assertion is misplaced, too, because Plaintiffs' interests were not adequately represented in the Burton lawsuit given Ms. Crowell's particularly poor performance. Preclusion by "adequate representation" requires the shared issues, or claims, to have been adequately litigated in the prior case. *See Richards*, 517 U.S. at 801 ("[A] prior proceeding, to have binding effect on absent parties, would at least have to be 'so devised and applied as to insure that those present are of the same class as those absent and *that the litigation is so conducted as to insure the full and fair consideration of the common issue.*'" (quoting *Hansberry v. Lee*, 311 U.S. 32, 43 (1940)) (emphasis added)). Without adequate litigation, "adequate

---

[5]  The Court also assumes that the relationships of Vincent's estate with Tristan and B.T.B. are those of father and sons. *Cf. Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996) (analyzing, for purposes of privity on wrongful death claims, the relationship between a *surviving* grandmother and her *surviving* granddaughter). And the Court again assumes in Defendants' favor that Donna has a stepmother relationship with Tristan and B.T.B. *See* ECF No. 1 at 4, 6 (describing Donna as Vincent's wife, and Tristan and B.T.B. as Vincent's sons, but not mentioning whether Tristan and B.T.B. are Donna's sons); *cf. Branch Banking & Tr. Co. v. Est. of Forouzan*, 727 F. App'x 239, 241 (9th Cir. 2018) (mem.) (making an assumption in favor of the movant when ultimately affirming the denial of the movant's motion to dismiss).

representation" crumbles as an exception to the "deep-rooted historic tradition" that "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party," *Taylor*, 553 U.S. at 892–93.

Inadequate litigation can be caused by the prior party itself. *See Sanguine, Ltd. v. U.S. Dep't of Interior*, 798 F.2d 389, 392 (10th Cir. 1986) (finding no privity and no preclusion where the prior party and its adversary resolved the common issues "by consent decree and not adversary litigation," preventing those issues from being "'litigated' in the true sense"); 18A Wright et al., *supra*, § 4454 ("[P]reclusion by representation requires that the [the prior party] representative attain some minimal level of adequate representation.  It is clear enough that preclusion is defeated by collusion between the representative and an adversary.  A conflict of interest that is apparent to the adversary may have the same effect[.]" (footnotes omitted)); *see also Bhatia*, 545 F.3d at 760 (finding no privity where, among other things, the prior party pursued a different litigation objective than the nonparty).

Inadequate litigation can also be caused by the prior party's legal counsel. *See Pelt v. Utah*, 539 F.3d 1271, 1287–89 (10th Cir. 2008) (finding inadequate representation and no claim preclusion where the prior party's claims were dismissed for failure to prosecute); *id.* at 1288 ("[F]or purposes of determining adequate representation [for claim preclusion], the performance of class counsel is

23

intertwined with that of the class representative."); *see also Sw. Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 102 (5th Cir. 1977) (finding res judicata where, among other things, the parties opposing preclusion had "not demonstrated, nor [could] [the court] find, any deficiency in the performance of the [prior] plaintiffs' counsel"); *Conroy v. SC Wings Aliso Viejo LLC*, 2017 WL 11630891, at *6 (C.D. Cal. Mar. 21, 2017) (finding res judicata where, among other things, the nonparty's interests were fully represented "because [prior] class counsel vigorously opposed the motion to compel arbitration both in writing and in oral argument, and even submitted a subsequent brief while the matter was under submission."  (citation, quotation marks, and editorial marks omitted)).

Here, the Court need not define the precise line between adequate and inadequate litigation by legal counsel for purposes of the "adequate representation" privity exception because Ms. Crowell's counsel was so poor that it would offend any conceivable notion of due process to apply preclusion based on the judgment in the Burton lawsuit.  *See Richards*, 517 U.S. at 802 ("[W]e are unable to conclude that the [prior] plaintiffs provided representation sufficient to [preclude the nonparty petitioners]. . . .  Accordingly, due process prevents the [petitioners] from being bound by the [prior plaintiffs'] judgment.").  Ms. Crowell's remarkably poor performance is demonstrated generally by the sanctions imposed and threatened on her by this Court; her tardy appearance at the summary judgment

hearing; her being unprepared to respond at that hearing to an argument raised in the opposing parties' reply brief; her bizarre request for the Court to take judicial notice of the Burton plaintiffs' unsworn complaint; and her suspension from the practice of law in the State of Hawai'i.  Also relevant is Mr. Green's withdrawal from the Burton lawsuit due to a personal conflict with Ms. Crowell.  Although the specifics of that conflict are under seal, the Court is aware of Mr. Green's assertions.

Particularly relevant to the preclusion issues at play in this case are Ms. Crowell's failure to prosecute the appeal before the Ninth Circuit and her failure to submit a concise statement of facts at summary judgment.  The latter failure is particularly important because Local Rule 56.1(g) and FRCP 56(e)(2) required the Court to deem admitted the defendants' statement of facts, all but concluding summary judgment against the Burton plaintiffs.  Notably, Ms. Crowell did not attempt to defend that failure as a strategic decision (by, for example, arguing that the defendants' own evidence established issues of fact)—instead, she confessed error and requested leave to file a well-overdue statement of facts.  The Court denied that request, of course, and repeatedly emphasized in its grant of summary judgment that Ms. Crowell "failed to proffer any evidence whatsoever," *e.g.*, *Burton*, 2022 WL 280999, at *13.

In sum, Ms. Crowell's general and specific faults created a mountain of representation errors blocking the "adequate representation" path to nonparty preclusion.  Plaintiffs are not, therefore, precluded by the judgment against the non-privy plaintiffs in the Burton lawsuit.[6]

Defendants also argue there is privity because Tristan, B.T.B., and Lerette are the surviving beneficiaries of Vincent's estate.  *See* ECF No. 87-1 at 19 ("Plaintiffs in the present case, including [Vincent]'s children, would be beneficiaries of his estate.  Privity lies between the administrator of an estate and the beneficiaries of that estate." (citing, *e.g.*, *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 997 (9th Cir. 2012)).  That argument could fall under the "adequate representation" or the "pre-existing substantive legal relationship" privity exceptions.  Regardless, that argument fails because neither the pleadings in this case nor the judicially noticed documents in the Burton lawsuit establish an inheritance right in favor of Tristan, B.T.B., or Lerette as a

---

[6]  The result would be no different if Hawaiʻi law controls the preclusion inquiry, *see* 18A Wright et al., *supra*, § 4472 (suggesting that state law should be consulted on a substantive issue like privity).  When assessing "adequate representation" privity, Hawaiʻi courts consider "various equitable factors," including "[w]hether it would be generally unfair in the second case to use the result of the first case" and "whether the first case was litigated strenuously or with vigor." *Tradewind Ins. Co. v. Stout*, 85 Hawaiʻi 177, 188, 938 P.2d 1196, 1207 (App. 1997) (citation omitted).  Ms. Crowell did not litigate the Burton plaintiffs' case strenuously or with vigor, and it would be unfair to bar Plaintiffs' claims based on the results of Ms. Crowell's representation.

matter of probate law (whichever state's law might apply).  The Court cannot take Defendants' unsupported assertion—a matter beyond the pleadings—as fact for purposes of their FRCP 12(c) Motion.

Further, Defendants make a res judicata-like argument that "Plaintiffs' loss of consortium claims fail because they are derivative claims and the underlying [estate] claim failed."  ECF No. 87-1 at 12 (capitalization removed) (citing *Towse v. State*, 64 Haw. 624, 636, 647 P.2d 696, 705 (1982), *Mist v. Westin Hotels, Inc.*, 69 Haw. 192, 200, 738 P.2d 85, 91 (1987), and *Davis v. United States*, 2009 WL 1455976, at *32 (D. Haw. May 26, 2009)).  The cases cited by Defendants are, however, distinguishable from this case because they involved derivative claims asserted in the *same* suit as the estate claims.  *See Towse*, 64 Haw. at 636, 647 P.2d at 705 ("Therefore, having determined that summary judgment had been properly granted as to the defamation claims [in the lower court], we find summary judgment also proper as to this [derivative] claim by appellant-wives."); *Mist*, 69 Haw. at 200, 738 P.2d at 91; *Davis*, 2009 WL 1455976, at *32.  When derivative claims are brought in a *different* suit from the estate claims, the estate suit's effect on the derivative suit is determined by the law of res judicata.  As explained above, the Burton lawsuit is not res judicata to Plaintiffs' claims.

And finally, Defendants argued during the June 2 hearing on the Motion that permitting Plaintiffs' claims to proceed might result in apparently contradictory

judgments from the Court in this case and in the Burton lawsuit. Defendants' policy argument is premature and, more importantly, is not dispositive of the preclusion inquiry. It is premature because the Burton lawsuit was dismissed at summary judgment, while this case is being litigated on the pleadings and could still be dismissed at summary judgment.

Defendants' policy argument is not dispositive because in an adversarial system where the parties are responsible for developing the facts of an incident, it is neither surprising nor offensive that two litigations involving the same incident might reach different outcomes based on different presentations of evidence. Now, if the two litigations involve the same parties (or their privies), then the law of preclusion generally says that the second should not proceed—the interested party already had one bite at the apple, and allowing a second bite would unjustifiably expend judicial resources and create undue costs for tending to multiple suits. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015). That is not the case here.

"Inconsistent verdicts" in two judgments are also a concern, *id.*, but not if those judgments are produced by different parties under different presentations of evidence. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1428 (Fed. Cir. 1988) ("[I]t is important that the district court and the [United States Patent and Trademark Office] can consider different evidence. Accordingly, different results between the

28

two forums may be entirely reasonable.").  In such a situation, the law of preclusion generally permits both litigations, because barring the second litigation would prevent the second party from having its day in court, *see Taylor*, 553 U.S. at 893, a due process interest that is not invariably overridden by a mere preference for consistent judgments.  *See United States v. Cudd*, 499 F.2d 1239, 1242 (10th Cir. 1974) ("Even the possibility of inconsistent verdicts does not change either the necessity or desirability of this procedure.  Consistency in a verdict is not an invariable exaction of the law.").  Again, it is worth emphasizing that parties litigate the facts of an incident in our adversarial system—the Court does not reach its own truth that controls disputes in all cases involving the incident.  *Cf. McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991) ("What makes a system adversarial rather than inquisitorial is not the presence of counsel, much less the presence of counsel where the defendant has not requested it; but rather, the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties.").

For those reasons, the Court rejects Defendants' res judicata arguments in their Motion.

**B.     Failure to State a Claim Upon Which Relief Can Be Granted**

Defendants make various arguments that they are entitled to judgment on the pleadings because Plaintiffs fail to state claims upon which relief can be granted. Those arguments challenge either the sufficiency of Plaintiffs' factual allegations or the viability of Plaintiffs' legal theories.  The Court first addresses the claims against the Officer Defendants.

**1.     Claims against the Officer Defendants**

In Count I, Plaintiffs assert a claim against the Officer Defendants under 42 U.S.C. § 1983 for using excessive force resulting in Vincent's death and causing Plaintiffs substantial damages.  The Officer Defendants specifically challenge Lerette's claim in Count I by arguing they are entitled to judgment against that claim because "[s]iblings, such as [Lerette], have no liberty interest under the Fourteenth Amendment."  ECF No. 87-1 at 13 n.6 (citing *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1992)).

The Court agrees with the Officer Defendants.  As Plaintiffs' counsel conceded at the June 2 hearing, Lerette's sibling relationship with Vincent cannot serve as a basis for a Fourteenth Amendment loss of companionship claim under § 1983.  *See Ward*, 967 F.2d at 283–84 (holding that siblings could not maintain a claim for loss of their brother's companionship under the Fourteenth Amendment, for purposes of § 1983); *see also Wheeler v. City of Santa Clara*, 894 F.3d 1046,

30

1058 (9th Cir. 2018) ("Few close relationships—even between blood relatives—
can serve as a basis for asserting Fourteenth Amendment loss of companionship
claims."). The Court thus grants judgment in favor of the Officer Defendants on
Lerette's version of Count I. Tristan and B.T.B.'s versions of Count I remain
against the Officer Defendants.

Counts III through VIII feature tort claims under Hawai'i law relating to the
allegations of wrongful death; Plaintiffs assert those claims against only the Officer
Defendants.[7] The Officer Defendants argue they are entitled to judgment against
those claims because those claims belong to Vincent's estate, not his survivors.
ECF No. 87-1 at 11 ("The Estate of Burton is not a party to this case. . . . Plaintiffs
are unable to bring any claims on behalf of the Estate because they do not represent
the Estate.").

The Officer Defendants misunderstand the nature of Plaintiffs' state law
claims. Plaintiffs plead substantial damages for losses of companionship, love, and
a lifetime of expected support, among other things. Those are harms allegedly
suffered by surviving Plaintiffs, not Vincent. And damages for those harms are

---

[7] While the tort claims in those Counts do name the "Defendants" as responsible
parties, *e.g.*, ECF No. 1 at 14, it makes little sense for tort claims such as "Assault
and Battery" to be asserted directly against the County. To the extent vicarious
liability was intended, Count IX covers such an intent through its claim of
"Respondeat Superior and/or Vicarious Liability" for the other Counts. *See id.* at
19–20. Plaintiffs' counsel admitted as much during the June 2 hearing.

recoverable by surviving Plaintiffs pursuant to subsection (b) of the Hawaiʻi

wrongful death statute, Hawaiʻi Revised Statutes ("HRS") § 663-3, which permits

damages "by the surviving . . . children" "with reference to the pecuniary injury

and loss of love and affection, including . . . [l]oss of society, companionship,

comfort, consortium, or protection, . . . [and] [l]oss of parental care, training,

guidance, or education, suffered as a result of the death of the person." So the

Court rejects the Officer Defendants' challenge to Plaintiffs' tort law claims in

Counts III through VIII.[8]

Taking Count XI before Count X, Plaintiffs assert a § 1983 claim against the

Officer Defendants for falsifying police reports and withholding information in

violation of Plaintiffs' Fourteenth and Fifth Amendment rights. The Officer

Defendants argue they are entitled to judgment against that claim because it lacks

factual allegations demonstrating which Fourteenth Amendment right was violated.

*See* ECF No. 87-1 at 22–24; *id.* at 23 (arguing that the caselaw "make[s] clear that

a false police report by itself is insufficient to state a claim; rather, there must be

---

[8] To the extent the Complaint alleges harms suffered by Vincent himself or by his
estate, e.g., funeral expenses and medical bills, Plaintiffs cannot recover damages
for those harms because Plaintiffs are not Vincent's legal representative. *See* HRS
§ 663-3(a) ("The [wrongful death] action shall be maintained on behalf of the
persons enumerated in subsection (b) [(the survivors)], except that the legal
representative may recover on behalf of the estate the reasonable expenses of the
deceased's last illness and burial.").

some constitutional deprivation that flows from the report"). Plaintiffs respond that their "ability to prosecute their case" has been harmed by the Officer Defendants' dishonest reporting, which amounts to a due process violation of their "Right to Property" in a cause of action. ECF No. 96 at 17 n.3, 18; *see also id.* at 15 ("A successful attempt by defendants to deprive a potential plaintiff of his right to bring a section 1983 action might well amount to actionable deprivation of federally protected rights." (quoting *Dooley v. Reiss*, 736 F.2d 1392, 1394–95 (9th Cir. 1984)).

Although Plaintiffs might have a due process right in their cause of action, *see Dooley*, 736 F.2d at 1395 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428–31 (1982)), they lack sufficient allegations to support a claim for the deprivation of that due process right. Plaintiffs do not allege that they previously brought a lawsuit that failed due to dishonest reporting. And while they do allege that the instant lawsuit has been "disrupt[ed]" by the Officer Defendants' dishonest reporting, ECF No. 1 at 22, such a disruption is insufficient to maintain a deprivation claim on their "right to property" in a section 1983 claim that has yet to be adjudicated. *See Byanooni v. City of Los Angeles*, 2005 WL 8154932, at *6 n.64 (C.D. Cal. Dec. 29, 2005) ("[Plaintiff] can assert that defendants conspired to cover up the officers' deliberate indifference by failing to investigate only if his § 1983 claim fails. Such a claim is, at this point, premature."), *aff'd*, 317 F. App'x

647 (9th Cir. 2009); *Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F. Supp. 2d 803, 834 (E.D. Pa. 1998) ("Section 1983 does not permit recovery for an attempted constitutional violation; only a claim of actual deprivation is cognizable under the statute."), *aff'd*, 165 F.3d 242 (3d Cir. 1999); *see also Dooley*, 736 F.2d at 1394–95 ("A *successful* attempt by defendants to deprive a potential plaintiff of his right to bring a section 1983 action might well amount to an actionable deprivation of federally protected rights."  (emphasis added)).

Plaintiffs' § 1983 claim against the Officer Defendants in Count XI is thus premature and not actionable as currently pled.  The Court grants the Officer Defendants' Motion with respect to that claim, effectively dismissing that claim without prejudice.  *See Aguilar v. Cnty. of Riverside*, 2014 WL 1795204, at *3 (C.D. Cal. Apr. 25, 2014) ("[D]ismissal of the fabricated-reports claim should be without prejudice to [plaintiff's] later renewing the claim if he can causally connect the fabrications to his failure to succeed in the instant lawsuit."), *order corrected*, 2015 WL 11233511 (C.D. Cal. Feb. 6, 2015); *see also Suffolk Constr. Co. v. Auto-Owners Ins. Co.*, 2019 WL 10786020, at *1 n.2 (M.D. Fla. Dec. 23, 2019) ("This order need not decide the most precise, useful, or theoretically correct label for the dismissal.  Whether for failure to state a claim under Rule 12(b)(6) or for lack of 'ripeness' under Rule 12(b)(1) . . . , the [deficient] claim warrants dismissal without prejudice.").

In Count X, Plaintiffs assert another claim against the Officer Defendants for falsifying police reports and withholding information in violation of their Fourteenth and Fifth Amendment rights, this time under 42 U.S.C. § 1985. It is clear to the Court that Plaintiffs allege the same constitutional violation in Count X as they do in Count XI. *See* ECF No. 96 at 15 (Plaintiffs arguing in favor of Counts X and XI that "[f]ederal law recognizes causes of action under 42 U.S.C. Sec. 1983 and 1985 for police falsification, cover-up or conspiracy to cover-up police reports or investigations in order to defeat a subsequent civil action"). Accordingly, Plaintiffs' claim against the Officer Defendants in Count XI—to the extent that Count even contains a viable § 1985 theory—is not actionable as currently pled in the Complaint. *See Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) ("[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations."). The Court grants the Officer Defendants' Motion with respect to the § 1985 claim in Count XI, effectively dismissing that claim without prejudice.

The last claim Plaintiffs assert against the Officer Defendants is for spoliation of evidence in Count XII. The Officer Defendants argue they are entitled to judgment against that claim because Hawaiʻi law does not recognize a cause of action for spoliation of evidence. ECF No. 87-1 at 24–26. Plaintiffs fail to respond to that argument in their Opposition. *See* ECF No. 96. Given that lack

of response, the Court deems Plaintiffs' spoliation claim abandoned.  *See Owens v. Cowan*, 2018 WL 1002313, at *8 (C.D. Cal. Jan. 17, 2018) ("Plaintiffs who fail to oppose a portion of a motion to dismiss may be deemed to have 'effectively abandoned [their] claim.'"  (quoting *Ramos v. JPMorgan Chase & Co.*, 690 F. App'x 533, 535 (9th Cir. 2017) (mem.)) (alteration in original)), *report and recommendation adopted*, 2018 WL 1009268 (C.D. Cal. Feb. 16, 2018); *Ali v. Synaptics, Inc.*, 796 F. App'x 464, 464 (9th Cir. 2020) (mem.) (finding appellate waiver of an argument not raised in opposition to a motion to dismiss).  So the Court grants judgment in favor of the Officer Defendants on Count XII.

### 2.    Claims against the County

Count I further includes a § 1983 claim against the County in relation to the Officer Defendants' using excessive force against Vincent.  *See* ECF No. 1 at 12–13 (alleging, in a rather conclusory manner, the existence of a "policy of condoning, ratifying, and/or failing to punish or prevent . . . the excessive and/or unnecessary use of force").  Count X further includes a § 1985 claim against the County in relation to the Officer Defendants' dishonest reporting.  And Count XI further includes a § 1983 claim against the County, also in relation to the Officer Defendants' dishonest reporting.  To the extent Counts I, X, and XI do not apply to the County, Count IX provides belt and suspenders by pleading vicarious liability

against the County for all the Officer Defendants' wrongful acts.  *See* ECF No. 1 at 19–23.

The County argues it is entitled to judgment as to Counts I, IX, X, and XI because vicarious liability is incompatible with §§ 1983 and 1985.  *See* ECF No. 87-1 at 21–22, 26–27.  The County further argues that if Plaintiffs assert liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1977), those Counts still fail because the Complaint lacks sufficient factual allegations to support a *Monell* claim.  ECF No. 87-1 at 26.

Plaintiffs do not respond to the County's arguments on vicarious liability and *Monell* liability.  *See* ECF No. 96.  The Court thus deems abandoned the claims asserted against the County in Counts I, X, and XI.  *See Owens*, 2018 WL 1002313, at *8; *Ali*, 796 F. App'x at 464.  Judgment is granted in favor of the County on those claims.  For the same reasons, the Court deems abandoned Count IX and grants judgment in favor of the County on that claim, so far as it is asserted against the County for vicarious liability under federal law.

Count IX could, however, be interpreted as asserting vicarious liability against the County based on the violations of Hawaiʻi law alleged in Counts III through VIII.  The Court sustained B.T.B.'s claims in Counts III through VIII, above.  Given that holding, and given that the County of Hawaiʻi can be held vicariously liable for torts "maliciously committed by an employee acting within

37

the scope of [his/her] authority," *McCormack v. City & Cnty. of Honolulu*, 762 F. Supp. 2d 1246, 1253 (D. Haw. 2011), the Court finds the factual allegations supporting Count IX sufficient to survive Defendants' Motion, so far as Count IX is being asserted by B.T.B. against the County under Hawaiʻi law.

Finally, in Count II, B.T.B. asserts a negligent training and supervision claim against the County under Hawaiʻi law. The County argues it is entitled to judgment against that claim because the Complaint alleges that the Officer Defendants were acting *within* their scope of employment, contrary to the requirements of a negligent training and supervision claim under Hawaiʻi law. *See* ECF No. 87-1 at 20–21. The County also argues that the Complaint lacks necessary allegations concerning the County being "put on notice" to exercise a greater degree of control or supervision of HPD's officers. *Id.* at 21. B.T.B. fails to respond to those arguments in the Opposition. *See* ECF No. 96. So the Court deems Count II abandoned and grants judgment in favor of the County on that claim.

## IV.   CONCLUSION

In summary, the Court GRANTS in part and DENIES in part Defendants' Motion for Judgment on the Pleadings, ECF No. 87. The Court denies the Motion with respect to Defendant's res judicata arguments based on *Burton v. City & Cnty. of Hawaii*, No. CV 20-00208 JAO-RT (D. Haw. filed May 4, 2020). And the

Court partially agrees with Defendants' arguments that Plaintiffs' claims are otherwise not actionable, resulting in the following disposition of Defendant's Motion for Judgment on the Pleadings:[9]

| | | Lerette's Claim | Tristan's Claim | B.T.B.'s Claim |
|---|---|---|---|---|
| **Count I:** "42 U.S.C. § 1983 (Color of Law)" | *Officer Defendants* | Granted | Denied | Denied |
| | *County* | Granted | Granted | Granted |
| **Count II:** "Negligent Training/Supervision" | *County* | (Previously Dismissed) | (Previously Dismissed) | Granted |
| **Count III:** "Assault and Battery" | *Officer Defendants* | Denied | Denied | Denied |
| **Count IV:** "Wrongful Death" | *Officer Defendants* | Denied | Denied | Denied |
| **Count V:** "Negligence" | *Officer Defendants* | Denied | Denied | Denied |
| **Count VI:** "Gross Negligence" | *Officer Defendants* | Denied | Denied | Denied |
| **Count VII:** "Intentional Infliction of Emotional Distress" | *Officer Defendants* | Denied | Denied | Denied |
| **Count VIII:** "Negligent Infliction of Emotional Distress" | *Officer Defendants* | Denied | Denied | Denied |

---

[9] The claims labeled "[Motion] Denied" are the only claims remaining in this case, and the claims remaining against the "Officer Defendants" are individual capacity claims only.

| | | | | |
|---|---|---|---|---|
| **Count IX:** **"Respondeat Superior and/or Vicarious Liability"** | *County* | Granted re: federal law<br><br>(Previously Dismissed re: Hawai'i law) | Granted re: federal law<br><br>(Previously Dismissed re: Hawai'i law) | Granted re: federal law<br><br>Denied re: Hawai'i law |
| **Count X:** **"Conspiracy to Interfere with Civil Rights – Submission of False Police Reports and Investigation and Coverup in Violation of 42 U.S.C. § 1985"** | *Officer Defendants* | Granted | Granted | Granted |
| | *County* | Granted | Granted | Granted |
| **Count XI:** **"42 U.S.C. § 1983 Submission of False Police Report and Investigation in Violation of Plaintiffs'/Decedent's 5th and 14th Amendment Rights to Property and Due Process"** | *Officer Defendants* | Granted | Granted | Granted |
| | *County* | Granted | Granted | Granted |
| **Count XII:** **"Spoilation [sic] of Evidence"** | *Officer Defendants* | (Previously Dismissed) | (Previously Dismissed) | Granted |

40

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, June 20, 2023.

Jill A. Otake
United States District Judge

CIV. NO. 20-00202 JAO-RT, *Lerette v. City & Cnty. of Hawaii*; Order Granting in Part and Denying in Part Defendants' Motion for Judgment on the Pleadings, ECF No. 87